## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| KYLE A. SMOKE AND JENNIFER M. MCINTYRE, on Behalf of Themselves and Others Similarly Situated | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:24-cv-02919 |
| v. | ) ) | |
| CHRISTINE WORMUTH, in her official capacity as United States Secretary of the Army; 101 Army Pentagon Washington, DC 20301-1000 | ) ) ) ) ) ) | CLASS ACTION |
| Defendant. | ) ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

1

## Table of Contents

INTRODUCTION ..........................................................................................................................3

FACTUAL BACKGROUND .........................................................................................................4

    I.      Federal Law and DoD Guidance Establish the Medical Retirement Process, Which Includes a "Combat-Related" Finding Under 26 U.S.C. § 104...................4

    II.     The Military Mandated the Use of Open-Air Burn Pits in Certain Military Operations, and Those Burn Pits Constitute IOWs. .................................................6

    III.    Congress Enacted the PACT Act To Expand Benefits for Servicemembers Exposed to the Military's Burn Pits........................................................................7

    IV.    Plaintiffs Suffer from PACT Act Conditions and Were Denied "Combat-Related" Findings Under 26 U.S.C. § 104..............................................................7

    V.     The PEB's Policy and Practice of Denying Combat-Related Designations for Burn-Pits Claims under 26 U.S.C. § 104 Is Wrong and Inconsistent with the Army's Practice Elsewhere.............................................................................9

ARGUMENT ................................................................................................................................11

    I.      The Proposed Class Satisfies the Requirements of Rule 23(a)..............................11

         A.    The Proposed Class Is Sufficiently Numerous. ........................................11

         B.    The Proposed Class Raises Questions of Law and Fact Common to the Entire Class. ...............................................................................................13

         C.    Plaintiffs' Claims Are Typical of the Entire Class. ..................................14

         D.    Plaintiffs and the Undersigned Counsel Will Adequately Represent the Class.........................................................................................................15

    II.     The Proposed Class Satisfies the Requirements of Rule 23(b)..............................16

CONCLUSION..............................................................................................................................17

## INTRODUCTION

When a servicemember is deemed medically unfit to remain in the military due to a physical disability and receives a medical retirement, the servicemember's retired pay will be tax free if the unfitting condition is "combat-related"—a term which includes conditions caused by an "instrumentality of war" ("IOW"). 26 U.S.C. § 104(b)(3)(B); Department of Defense Instruction ("DoDI") 1332.18, § 10.2. Plaintiffs Sergeant First Class ("SFC") Kyle A. Smoke, Lieutenant Colonel ("LTC") Jennifer M. McIntyre, and the Class members that they represent are servicemembers who were deemed medically unfit due to conditions caused by their exposure to the military's use of burn pits—an IOW—in certain post-9/11 military operations. *See* 38 U.S.C. § 1119. Although the military's burn pits constitute IOWs by its own definitions, the Defendant, acting through the United States Army Physical Evaluation Board ("PEB"), has a policy and practice that finds otherwise under 26 U.S.C. § 104 and has denied Plaintiffs and Class members the tax-free retired pay that they deserve. This policy and practice are made more egregious given that these conditions are presumptively caused by exposure to the military's use of burn pits under the Sergeant First Class Heath Robinson Honoring our Promise to Address Comprehensive Toxins ("PACT") Act ("PACT Act Conditions"). The PEB's policy and practice of medically retiring soldiers for PACT Act Conditions without also finding the conditions to be "combat-related" is arbitrary, capricious, unsupported by substantial evidence, and contrary to law under the Administrative Procedure Act. *See* 5 U.S.C. § 706(2)(A).

This Class should be certified as it satisfies each of the requirements set forth in Federal Rule of Civil Procedure 23 ("Rule 23"). *First*, joinder of all Class members is impracticable because the proposed Class members number at least forty—and likely far more—making class treatment more efficient than adjudicating each Class member's individual lawsuit. *See* Fed. R. Civ. P. 23(a)(1). *Second*, this case involves a common question with a common answer: whether

the PEB's policy and practice of medically retiring soldiers for PACT Act Conditions without also finding those conditions "combat-related" under 26 U.S.C. § 104, specifically on the grounds that burn pits are not IOWs, is arbitrary, capricious, unsupported by substantial evidence, and contrary to law. *See* Fed. R. Civ. P. 23(a)(2). *Third*, Plaintiffs' claims are typical of those of the proposed Class because, like all other Class members, they were harmed by the PEB's policy and practice of medically retiring soldiers for PACT Act Conditions without also finding those conditions to be "combat-related" under U.S.C. § 104. *See* Fed. R. Civ. P. 23(a)(3). *Fourth*, Plaintiffs and their counsel will adequately represent the Class and are prepared to vigorously prosecute this action on behalf of the Class. *See* Fed. R. Civ. P. 23(a)(4). *Finally*, class certification is warranted under Rule 23(b)(2) because the Class has been harmed by the Defendant's common policy and practice and Plaintiffs are seeking injunctive and declaratory relief which is appropriate for the Class as a whole.

## **FACTUAL BACKGROUND**

I.    **Federal Law and DoD Guidance Establish the Medical Retirement Process, Which Includes a "Combat-Related" Finding Under 26 U.S.C. § 104.**

Federal law provides a process through which the Army (and other military branches) discharges servicemembers due to physical disability. *See* 10 U.S.C. § 1201 *et seq*. The U.S. Department of Defense ("DoD") has established a Disability Evaluation System ("DES") to prescribe standards and procedures for conducting evaluations of servicemembers suffering from physical disability. *See* DoDI 1332.18.

The DES consists of several stages of review. First, the Medical Evaluation Board ("MEB") evaluates a servicemember's condition by reviewing the servicemember's prior medical examinations and relevant treatment records. *See* DoDI 1332.18, § 3.2. The MEB then determines whether the servicemember has one or more physical conditions that fall below retention

standards. *Id.*, § 3.2(d). If the servicemember falls below standards, the MEB refers the servicemember to the Physical Evaluation Board ("PEB"). *Id.*

At the first step of the PEB process, the Informal Physical Evaluation Board ("IPEB") reviews the servicemember's medical information and makes a determination of whether he or she is fit to remain in the military. *Id.*, § 3.3(b). If the IPEB determines that one or more of the servicemember's conditions are "unfitting," the IPEB will refer the servicemember's case to the Department for Veterans Affairs ("VA"). *See id.*, § 8.1. The VA then determines the severity of the servicemember's disability, assigning a rating from 0% to 100%. *Id.* If the VA assigns a disability rating of 30% or higher for an "unfitting" condition, the servicemember is deemed medically "retired" and eligible to receive retired pay. *See* 10 U.S.C. § 1201; DoDI 1332.18, § 11.5.

As part of this process, the IPEB must determine whether the servicemember's unfitting disability is "combat related" under 26 U.S.C. § 104. If it is combat related, the servicemember's retired pay will be tax free. DoDI 1332.18, § 10.2. A servicemember's disability is "combat-related" if—among other definitions not relevant here—a preponderance of the evidence shows that it was incurred as a result of an "instrumentality of war." 26 U.S.C. § 104(b)(3)(B). The DoD defines "instrumentality of war" as a "vehicle, vessel, or device designed primarily for military service and in use by a military service at the time of the occurrence or injury." DoDI 1332.18, § G.2. This definition is met if the "disability was incurred . . . as a result of . . . injury or sickness caused by fumes, gases, or explosion of military ordnance, vehicles, or material." *Id.*, § 10.2(b)(4).

At the conclusion of the IPEB process, the servicemember may either (A) accept the IPEB's findings, or (B) appeal the IPEB's findings—including its "combat-related" finding—to the Formal Physical Evaluation Board ("FPEB"). *Id.*, § 3.3(c). The FPEB either upholds the

IPEB's decision or replaces it with its own. *Id.* Once the final decision has been issued by the PEB, the case is sent to the Army Physical Disability Agency ("PDA"), which may revise the findings or return a case to the PEB for reconsideration.

## II.    The Military Mandated the Use of Open-Air Burn Pits in Certain Military Operations, and Those Burn Pits Constitute IOWs.

After September 11, 2001, the military mandated the use of open-air burn pits in the United States' forward operating bases in Afghanistan, Iraq, and elsewhere. *See In re KBR, Inc., Burn Pit Litig.*, 268 F. Supp. 3d 778, 791 (D. Md. 2017) (quoting Lieutenant General (Ret.) Ricardo Sanchez, Commanding General of the First Armored Division, Fifth Corps Commander, and Commanding General of Combined Joint Task Force 7 in Iraq), *aff'd in part and vacated in part*, 893 F.3d 241, 262 (4th Cir. 2018) (affirming the district court's finding that the military mandated the use of open air burn pits in Iraq and Afghanistan). According to the DoD, the military mandated the use of burn pits to mitigate the risks associated with waste transportation outside of camp perimeters and to contribute to operational security. *See* DoD Report to Congress on the Use of Open-Air Burn Pits by the United States Armed Forces (Apr. 28, 2010).

Under the DoD's own definitions and guidance, the military's burn pits constitute IOWs. In particular, the DoD defines a "burn pit" as an "area . . . designated for the purpose of disposing of solid waste . . . [at a] location[] with more than *100 attached or assigned [military] personnel* [and that is] in place for more than 90 consecutive days." DoDI 4715.19, §§ G.2, 3.2(a)(4) (emphasis added). In addition, the Army requires that, in order to use a burn pit, a Combatant Commander responsible for operational planning and execution must determine that no alternative disposal method is feasible. *Id.*, § 3.1. Further, as acknowledged by the DoD, the military's use of burn pits are a necessity for the military's operations and are used for a uniquely military-related purpose. *See* DoD Report to Congress on the Use of Open-Air Burn Pits by the United States

Armed Forces (Apr. 28, 2010) (stating, as mentioned, that the military uses burn pits to avoid waste transportation outside of camp perimeters and to contribute to operational security). Accordingly, the military's burn pits are plainly "vehicle[s], vessel[s], or device[s] designed primarily for military service" and therefore constitute IOWs. DoDI 1332.18, § G.2.

## III.     Congress Enacted the PACT Act To Expand Benefits for Servicemembers Exposed to the Military's Burn Pits.

Unfortunately, the military's burn pits have exposed the military's servicemembers to smoke that causes certain respiratory illnesses, cancers, and other diseases. Accordingly, after many years of advocacy by veterans groups, the PACT Act became law on August 10, 2022, expanding eligibility for VA benefits, including for veterans who served in certain locations where the military used burn pits. *See* 38 U.S.C. §§ 1119, 1120. The PACT Act set forth a "[p]resumption of service connection for certain diseases" that are "associated with exposure to burn pits and other toxins." *Id.* § 1119. In particular, when a servicemember is diagnosed with a covered condition and served in certain locations with a military burn pit, the PACT Act requires the VA to consider the servicemember's condition to "have been incurred in or aggravated during active military . . . service," even if "there is no record of evidence of such disease during the period of such service." 38 U.S.C. § 1120(a). Covered service locations and timeframes under the PACT Act include Afghanistan on or after September 11, 2001; Iraq on or after August 2, 1990; and other locations in the Middle East and Africa since either September 11, 2001, or August 2, 1990. *See* 38 U.S.C. § 1119(c)(1).

## IV.     Plaintiffs Suffer from PACT Act Conditions and Were Denied "Combat-Related" Findings Under 26 U.S.C. § 104.

Plaintiffs SFC Smoke and LTC McIntyre honorably served in the United States Army at locations and during timeframes covered under the PACT Act presumptions. Unfortunately, they

were exposed to smoke from the military's burn pits and since have been diagnosed with conditions covered under the PACT Act. In particular, SFC Smoke served in Iraq from 2006–07 and again from 2008–09. Complaint, ECF No. 1, ¶ 16. He ultimately was diagnosed with severely duty-limiting asthma, despite having no chronic lung disease prior to his exposure to smoke from the military's burn pits during his deployments. *Id.*, ¶ 17. LTC McIntyre served in Iraq and Afghanistan four times from 2004 to 2021. *Id.*, ¶ 31. In 2022, she was diagnosed with incurable breast cancer, for which she has received palliative chemotherapy to prolong her life. *Id.*, ¶ 35.

Both SFC Smoke and LTC McIntyre sought treatment for their conditions and were referred to the MEB. *Id.*, ¶¶ 18, 36. The MEB concluded that that they did not meet retention standards for military service and in turn referred them to the PEB. *Id.* During the PEB process, the IPEB found that SFC Smoke and LTC McIntyre's conditions—which were assigned a 30% and 100% disability rating, respectively—caused them to be unfit for continued military service, entitling them to medical retirement benefits. *Id.*, ¶¶ 19, 37. However, the PEB determined that neither SFC Smoke nor LTC McIntyre's conditions were combat-related under 26 U.S.C. § 104 or caused by an IOW.

In Smoke's case, the PDA—reversing an initially favorable ruling from the FPEB—determined that, "[a]ccording to current policies and regulations, burn pits . . . do not rise to the level of being . . . an instrumentality of war." *Id.*, ¶ 23. According to the PDA, "there is no DoD guidance that the PACT Act is making the presumption that burns pits are an [IOW]." *Id.*, ¶ 75. The PDA particularly agreed with one of the FPEB's dissenting members, who found that

"there was insufficient evidence provided [by SFC Smoke] suggesting that the items burned *in* the burn pit . . . were uniquely military in nature." *Id.*, ¶ 22 (emphasis added).

In LTC McIntyre's case, the IPEB specifically stated that "[her] disability disposition is not based on disease or injury . . . caused by an instrumentality of war." *Id.*, ¶ 38. On review, the FPEB agreed, finding that "the mere presence of being in Afghanistan and Iraq does not correlate to [LTC McIntyre's] condition having a direct causal relationship . . . to an instrumentality of war." *Id.*, ¶ 40. The FPEB further stated that "[while] LTC McIntyre testified to being exposed to burn pit fumes . . . while she was deployed and carrying out her duties, she presented no evidence as to what was being burned at the time of her exposure." *Id.*, ¶ 74. In other words, as evidenced both by SFC Smoke and LTC McIntyres's cases, the PEB has a policy and practice of requiring that a servicemember demonstrate that the precise items burned inside a burn pit at the time of exposure were *themselves* IOWs, rather than treat a burn pit *itself* as an IOW.

**V.    The PEB's Policy and Practice of Denying Combat-Related Designations for Burn-Pits Claims under 26 U.S.C. § 104 Is Wrong and Inconsistent with the Army's Practice Elsewhere.**

In the course of this lawsuit, Plaintiffs will prove that the PEB's policy and practice of denying a combat-related finding under 26 U.S.C. § 104 for PACT Act Conditions is arbitrary, capricious, unsupported by substantial evidence, and contrary to law. *See* 5 U.S.C. § 706(2)(A). As explained, the military's burn pits *themselves* are "vessel[s] . . . or device[s]" used "primarily for military service." DoDI 1332.18, § G.2. In addition, the Army acknowledges that both Smoke and McIntyre's PACT Act Conditions were caused by their exposure to burn pits—specifically, the "fumes [and] gases" from those burn pits. Complaint, ECF No. 1, ¶¶ 27, 45; DoDI 1332.18, § 10.2(b)(4). Therefore, according to the Army's own logic, the military's burn pits are IOWs and

Plaintiffs SFC Smoke and LTC McIntyre are entitled to combat-related findings under 26 U.S.C. § 104.

The PEB's policy and practice is also contrary to the Army's practice elsewhere. In particular, separate from the medical-retirement process discussed above, servicemembers may apply for Combat-Related Special Compensation ("CRSC"), a program that provides extra compensation to military retirees for their disabilities. *See* 10 U.S.C. § 1413a. To receive the benefit, servicemembers must show that their disabilities are "combat-related"—a term, just like under 26 U.S.C. § 104, that is defined in part as a disability that was incurred through an "instrumentality of war." *Id*. § 1413a(c). However, unlike the PEB under 26 U.S.C. § 104, the Army's CRSC Board awards—as it should—extra compensation to servicemembers with burn-pit related claims on grounds that the military's burn pits themselves *do* qualify as IOWs. For example, when SFC Smoke applied for CRSC, the CRSC Board approved his claim, stating that his "asthma [burn pit exposure]" was a "verified disability as combat-related due to an Instrumentality of War." Complaint, ECF No. 1, ¶ 27. The CRSC Board likewise approved LTC McIntyre's claim on the same grounds. *Id.*, ¶ 45.

While the exact number of class members is known only by the PEB, it is a reasonable assumption that SFC Smoke and LTC McIntyre are but only two of the many servicemembers who have been denied a "combat-related" finding under 26 U.S.C. § 104 pursuant to the PEB's policy and practice. Therefore, Plaintiffs aim to represent a class defined as follows (the "Proposed Class"):

> United States Army veterans whose final medical retirement decision was issued after August 10, 2022 and who (1) were medically retired for an unfitting PACT Act Condition; (2) served in locations and during timeframes defined in 38 U.S.C. § 1119; and (3) received a final medical retirement decision that found their unfitting PACT Act Condition was not "combat related" under 26 U.S.C. § 104

despite their exposure to military burn pits and the PACT Act presumption that such exposure caused them to incur their unfitting disability.

## ARGUMENT

Rule 23 establishes the requirements for maintaining a class action. First, it requires that all class actions satisfy four prerequisites: numerosity, commonality, typicality, and adequacy. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). Second, the suit must fit into one of the categories described in Rule 23(b). As demonstrated below, the criteria for class certification are met here.

**I.    The Proposed Class Satisfies the Requirements of Rule 23(a).**

Pursuant to Rule 23(a), a suit may be certified as a class action if the following conditions are present:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

**A.    The Proposed Class Is Sufficiently Numerous.**

The numerosity inquiry asks whether joinder is impracticable due to the number of class members. In short, would it be too expensive, burdensome, and inconvenient—for the parties and the Court—to join all members of the class individually and to litigate the claims of each class member on an individual basis? *See DL v. District of Columbia*, 302 F.R.D. 1, 11 (D.D.C. 2013) ("Demonstrating impracticability of joinder does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." (internal quotation marks and quoted source omitted)); *Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*, 246 F.R.D. 293, 306–07 (D.D.C. 2007).

There is no numeric formula for certification under Rule 23. *General Telephone Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 330 (1980). Courts have presumed that the numerosity requirement is met when there are at least forty class members. *See, e.g.*, *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 239 F.R.D. 9, 25 (D.D.C. 2006) ("[C]ourts in this jurisdiction have observed that a class of at least forty members is sufficiently large to meet th[e] [numerosity] requirement."); *Meijer*, 246 F.R.D. at 306 ("[C]ourts in this Circuit have stated that the numerosity requirement is generally satisfied by a proposed class of at least 40 members[.]" (internal quotation marks and quoted source omitted)); *Lindsay v. Gov't Emps. Ins.*, 251 F.R.D. 51, 55 (D.D.C. 2008) ("Typically, a class in excess of 40 members is sufficiently numerous to satisfy this requirement.").

Here, only the PEB knows the exact number of Class members because its decisions are not publicly available. Plaintiffs, when permitted, intend to seek discovery to ascertain the exact number. Nevertheless, it is a reasonable assumption that the total number of Class members is at least forty—and likely far greater.

In particular, the DoD issues an annual report that includes data on the number of medical retirees in a given year, broken down by branch of service. For Fiscal Year 2022 (ending in September 30, 2022),[1] which is the latest data publicly available, there were 10,875 Army service members medically retired.[2] Based on this data, it is a reasonable assumption that approximately 10,000 Army service members are medically retired each year. Therefore, it follows that, in the more than two years since August 10, 2022 (when the PACT Act was enacted), approximately

---

[1] *See* U.S. DEPT. OF DEFENSE, OFFICE OF THE ACTUARY, STATISTICAL REPORT ON THE MILITARY RETIREMENT SYSTEM, FISCAL YEAR ENDED SEPTEMBER 30, 2022 (Oct. 2023), *available at* https://actuary.defense.gov/Portals/15/Documents/Stat%20report/MRS%20StatRpt%202022%20v999.pdf?ver=ZrA15iy55WA_HjmB4sU8LA%3d%3d.

[2] *Id.* at 65 ("Military Retirees Retired During FY 2022 by Gender and Branch of Service").

20,000 Army servicemembers have received a final medical retirement decision dated after August 10, 2022 (and then have been medically retired).

In addition, out of the approximately 20,000 Army servicemembers that have received a final medical retirement decision dated after August 10, 2022, it is a reasonable assumption that at least forty of them are members of the Proposed Class. The total number of servicemembers who have served in locations covered by the PACT Act, such as Afghanistan and Iraq, is in the hundreds of thousands.[3] And, as demonstrated by SFC Smoke and LTC McIntyre's cases, the PEB has a policy and practice of denying combat-related designations under 26 U.S.C. § 104 for burn-pit claims. Thus, based on that policy and practice and the vast number of Army servicemembers who have served in PACT Act locations, we may reasonably conclude that at least forty out of the 20,000 medically-retired Army servicemembers since August 10, 2022, were retired for PACT Act Conditions and denied combat-related status under 26 U.S.C. § 104. In sum, the numerosity requirement for class certification is satisfied.

      B.    <u>The Proposed Class Raises Questions of Law and Fact Common to the Entire Class.</u>

Commonality exists when there are questions of law or fact common to all members of the class. Fed. R. Civ. P. 23(a)(2); *see also Wal-Mart*, 564 U.S. at 349–50. The Supreme Court has explained that the commonality requirement is met when there is at least one question that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth

---

[3] *See* U.S. DEPT. OF DEFENSE, DEFENSE OFFICIAL SAYS U.S. REMAINS COMMITTED TO MIDDLE EAST (June 2023), *available at* https://www.defense.gov/News/News-Stories/Article/Article/3417495/defense-official-says-us-remains-committed-to-middle-east/#:~:text=Although%20the%20U.S.%20at%20one,%2Dand%2Dassist%20missions%20only.

13

or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350.

Here, the Proposed Class alleges a common fact: the PEB has denied each member a combat-related finding under 26 U.S.C. § 104 for his or her PACT Act condition in a final medical retirement decision. The Proposed Class also shares the same legal theory: the PEB's policy and practice of medically retiring soldiers for PACT Act Conditions without also finding the conditions to be combat-related under 26 U.S.C. § 104 is arbitrary, capricious, unsupported by substantial evidence, and contrary to law. *See* 5 U.S.C. § 706(2)(A). And finally, the Proposed Class shares common central legal questions supporting their legal theory, including:

     a) Whether burn pits are IOWs, as defined under DoDI 1332.18; and

     b) Whether it is arbitrary and capricious for the Army to consider burn pits to be IOWs when it relates CRSC determinations, but not to consider burn pits to be IOWs for combat-related findings in the PEB process.

Accordingly, based on this common fact and law, the commonality requirement for class certification is also satisfied.

    C.   <u>Plaintiffs' Claims Are Typical of the Entire Class.</u>

Courts within this Circuit regularly analyze typicality together with commonality, as the inquiries "often overlap." *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 181 (D.D.C. 2015); *see also O.A. v. Trump*, 404 F. Supp. 3d 109, 155 (D.D.C. 2019). Typicality requires a showing that the class representatives "possess the same interest and suffer the same injury" as the other class members. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (internal quotation and citation omitted); *see also Bynum v. District of Columbia*, 214 F.R.D. 27, 34 (D.D.C. 2003) ("[T]he typicality requirement focuses on whether the representatives of the class suffered a similar injury from the same course of conduct.") (emphasis omitted). In general, the claims of class

14

representatives are typical if they "arise[] from the same event or practice or course of conduct that gives rise to a claim of another class member's where his or her claims are based on the same legal theory." *Bynum*, 214 F.R.D. at 34 (internal quotation marks and quoted source omitted).

Here, Plaintiffs Smoke and McIntyre have suffered identical legal injuries to the other Class members: they were harmed by the PEB's policy and practice of medically retiring soldiers for PACT Act Conditions without also finding the conditions to be combat-related under 26 U.S.C. § 104. Thus, because Plaintiffs Smoke and McIntyre "possess the same interest and suffer the same injury as the other class members," the typicality requirement for class certification is likewise satisfied. *Falcon*, 457 U.S. at 156 (internal quotation marks and quoted source omitted).

D.    Plaintiffs and the Undersigned Counsel Will Adequately Represent the Class.

Adequacy embraces two components: the class representatives must (1) "not have antagonistic or conflicting interests with the unnamed members of the class," and (2) "appear able to vigorously prosecute the interests of the class through qualified counsel." *J.D. v. Azar*, 925 F.3d 1291, 1312 (D.C. Cir. 2019) (internal quotation marks and quoted source omitted).

Here, (1) Plaintiffs have no interest antagonistic to other members of the Proposed Class, and (2) the undersigned attorneys are competent and experienced in class action litigation and veterans' matters. This competence and experience enable them to assist Plaintiffs SFC Smoke and LTC McIntyre to fairly and adequately protect the interests of the Proposed Class. Indeed, the purpose of the National Veterans Legal Services Program, whose attorneys serve as co-counsel in this matter, is to represent the interests of veterans and advocate policy and unfair treatment, and these attorneys have significant class action experience, including being appointed as class counsel in other veteran class actions. *See* Exhibit A, Declaration of R. Bobroff. Attorneys from Sidley Austin LLP also have significant class action experience, including Elizabeth Chiarello, who has successfully litigated many complex class action matters, and Emily Wexler who has been

appointed as class counsel in other veteran class actions as well. *See* Exhibit B, Declaration of E. Chiarello. In sum, the adequacy requirement for class certification is also satisfied.

## II.     The Proposed Class Satisfies the Requirements of Rule 23(b).

In addition to satisfying the four threshold requirements of Rule 23(a), the action must fall within one of the categories of cases set forth in Rule 23(b). This action qualifies for class certification under Rule 23(b)(2).

A class action "may be maintained" under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). As the Supreme Court has explained:

> The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them. In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.

*Wal-Mart*, 564 U.S. at 360 (internal quotation marks and quoted source omitted).

This action easily satisfies Rule 23(b)(2)'s standard. The PEB's current policies and regulations apply to all members of the Class. Indeed, the Defendant has stated that its combat-related findings under 26 U.S.C. § 104 are "according to current policies and regulations" pursuant to which "burn pits do not rise to the level of being an IOW." Complaint, ECF No. 1, ¶ 23. On behalf of the Proposed Class, Plaintiffs SFC Smoke and LTC McIntyre are challenging these policies and practices that caused harm to the entire Proposed Class, meaning that final injunctive and declaratory relief is appropriate respecting the Class as a whole. Thus, Rule 23(b)(2)'s requirement is satisfied.

## <u>CONCLUSION</u>

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs, by and through their

undersigned counsel, respectfully request that the Court (1) certify the Proposed Class; (2) appoint

Plaintiffs as class representatives; and (3) appoint Plaintiffs' counsel as class counsel.

Dated: November 14, 2024                    Respectfully submitted,

<u>/s/ Emily Wexler</u>
Elizabeth M. Chiarello, IL Bar No. 6285915
Emily M. Wexler, IL Bar No. 6270284
Mark C. Priebe, IL Bar No. 6336588
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
echiarello@sidley.com
ewexler@sidley.com
mpriebe@sidley.com

Daniel J. Hay, D.C. Bar. No. 1047969
C.K. Kevin Park, D.C. Bar No. 1644103
Susan K. Whaley, D.C. Bar No. 90018472
Sidley Austin LLP
1501 K Street, N.W.
Washington, DC 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711
dhay@sidley.com
ck.park@sidley.com
susan.whaley@sidley.com

Rochelle Bobroff, DC Bar No. 420892
Esther Leibfarth, DC Bar No. 10164515
NATIONAL VETERANS LEGAL SERVICES
PROGRAM
1100 Wilson Boulevard
Arlington, VA 22209
Telephone: (202) 621-5709
Facsimile: (202) 223-9199
rochelle@nvlsp.org
esther@nvlsp.org

17